UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RICHARD B. CARTER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 1:14-cv-1845-WTL-DML |
| | ) |
| ANTWON E. KEYES, and | ) |
| CITY OF INDIANAPOLIS, | ) |
| | ) |
| Defendants. | ) |

### ENTRY ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This cause is before the Court on the Defendants' motion for summary judgment (Dkt. No. 41). This motion is fully briefed, and the Court, being duly advised, **GRANTS IN PART** and **DENIES IN PART** the motion for the reasons, and to the extent, set forth below.

### I.   STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed and all reasonable inferences must be drawn in the non-movant's favor. *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007); *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) ("We view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor."). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490. Finally, the non-moving party bears the burden of specifically identifying the relevant evidence

of record, and "the court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.,* 242 F.3d 713, 723 (7th Cir. 2001).

## II.    BACKGROUND

This case arises out of an encounter between Plaintiff Richard B. Carter and Defendant police officer Antwon E. Keyes in the early morning hours of October 21, 2012. The Plaintiff alleges that Keyes arrested and detained him without probable cause, violating his rights under the Fourth and Fourteenth Amendments and state law. The relevant facts that follow are taken in the light most favorable to the Plaintiff and appear as set forth in his affidavit.

    3.    During the weekend of October 19-21, 2012, the 2012 WNBA Finals were in Indianapolis and being televised by ESPN Networks.

    4.    I served as Aerial Video Services' on-site representative at ESPN Networks' telecast, providing videography services for the production.

    5.    Game 3 of the 2012 WNBA Finals took place on Friday, October 19, while Game 4 was set for Sunday, October 21.

    6.    On the Saturday between games, I accompanied other members of the ESPN production team for an evening of dinner, drinks, and music. We had dinner at the Indianapolis Colts Grille in downtown Indianapolis before heading to the Slippery Noodle Inn to hear some blues music.

    7.    During the evening, I consumed a full meal and about 4 or 5 regular size beers over the course of 6 or 7 hours.

    8.    Once the outing concluded, I began walking back to my downtown hotel with a couple of other team members who I believe were also cameramen.

    9.    While heading north on Meridian Street, I was on the sidewalk at a crosswalk when I noticed a police officer aggressively push another man onto the hood of a police car before throwing the man down on the pavement. I then saw the officer set the man up on the curb and kick his legs in an attempt to spread them apart.

    10.    After seeing what the officer had done, I turned to one of the cameramen and said, "That was excessive." I spoke using my normal tone and volume.

11. At that point, another officer from the Indianapolis Police Department began yelling at me and telling me to "move along" and "get out of here." I did as I was told, and started walking again toward my hotel. However, multiple Indianapolis police officers immediately encircled me and began chest bumping me.

12. At one point, one officer, whom I now know to be Antwan [sic] Keyes, yelled "this guy is drunk; you're going to jail." Officer Keyes then arrested me, handcuffed me, and eventually put me in a van that took me to the Marion County Jail.[1]

13. I was told that I was under arrest for public intoxication, but I was not given a sobriety test and I was not asked to provide a breath sample or blood. I was held in the jail for several hours before being released and told to "chalk it up to a bad night."

14. No charges were filed against me for the incident, and no further action was taken against me.

. . .

16. When I left the Slippery Noodle, I did not stagger, nor did I stagger or have trouble walking as I was heading to my hotel.

17. While heading back to my hotel, I did not yell or otherwise raise my voice, and I certainly did not yell or utter any obscenities. The only statement I made within earshot of the police officers I encountered that night prior to my arrest was my statement to the other cameraman with me that "that was excessive" in relation to what I had seen.

18. While walking back to my hotel, and in my encounter with the police, I did not have any trouble speaking, and I was not slurring any of my words.

19. At no point during the evening did I ever engage in any activity that would have endangered my life or anyone else's life[.]

Dkt. No. 59-1.

---

[1] The Defendants' facts specify that "[the] Plaintiff was transported to the Arrestee Processing Center and eventually released sometime after 12:00 p.m. because the State of Indiana declined to file charges," Dkt. No. 42 at 2, which the Plaintiff does not dispute.

### III.   DISCUSSION

The Defendants move for summary judgment with respect to all of the Plaintiff's claims. As a preliminary matter, the Court notes that the Plaintiff in his brief "recognizes that *respondeat superior* does not apply in the context of a claim under 42 U.S.C. § 1983." Dkt. No. 58 at 8. Generally, a local government can be found liable under § 1983 only where the entity itself, through its policy or custom, causes a constitutional violation. *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 694 (1978); *see also Hahn v. Walsh*, 762 F.3d 617, 638-39 (7th Cir. 2014) ("*Monell* permits suits against municipal entities under § 1983, but only when a governmental policy or custom caused the constitutional deprivation; municipal entities cannot be liable for their employees' actions under a respondeat superior theory."). The Plaintiff acknowledges that he does not have evidence supporting a claim against the City of Indianapolis under *Monell* and "concedes that his claim . . . cannot survive summary judgment." Dkt. No. 58 at 8. Accordingly, the Court grants summary judgment in favor of Defendant City of Indianapolis with respect to the federal claim against it.

#### A.   Material Facts in Dispute

With respect to the Plaintiff's remaining claims, the Defendants maintain that the facts are undisputed and support a finding of probable cause for the Plaintiff's arrest, requiring that his claims be summarily denied. Dkt. No. 42 at 6. Contrary to the Defendants' assertion, the parties present two irreconcilable versions of what happened on October 21, 2012. The Defendants do not argue that if the Plaintiff's version of events is credited, he still loses some or all of his claims as a matter of law; rather, they rely on their belief that there are no material facts in dispute. Specifically, the Defendants contend as follows:

> [T]he undisputed facts prove that (1) [the] Plaintiff was in downtown Indianapolis on the night of October 20 and the early morning hours of October 21, 2012; (2)

4

> [the] Plaintiff was yelling, which drew Officer Keyes' attention to him; (3) [the] Plaintiff smelled of alcohol and his eyes were bloodshot; and (4) [the] Plaintiff's actions and demeanor reasonably led Officer Keyes to believe [the Plaintiff] was under the influence of alcohol, and therefore, publicly intoxicated.

Dkt. No. 60 at 3.

There exists in this case genuine issues of material fact in dispute. Specifically, the Plaintiff has provided evidence disputing the material facts supporting the Defendants' contentions in points two and four above. With respect to the Defendants' point two, the Plaintiff asserts in his affidavit that he "did not yell or otherwise raise [his] voice, and [] certainly did not yell or utter any obscenities." Dkt. No. 59-1 ¶ 17. Additionally, the Plaintiff presents several facts disputing the Defendants' statement in point four. *See, e.g.*, *id.* at ¶¶ 16, 18, and 19 (explaining that he did not stagger or have trouble walking; did not have trouble speaking and was not slurring his words; and did not engage in activity that would have endangered his or anyone else's life, respectively). Therefore, the Plaintiff has demonstrated that there are genuine issues of material fact as to whether the Defendants violated his rights under both state and federal law. Moreover, the Plaintiff's facts, if believed, would permit a reasonable jury to discredit the Defendants' version of events. Because the Defendants' motion for summary judgment is dependent upon their version being true, and the Court cannot weigh the evidence or make credibility determinations at the summary judgment stage, the Defendants' motion must be denied except to the extent that immunity applies, as discussed below.

## B. Immunity

The Defendants argue that Keyes is entitled to qualified immunity with respect to the Plaintiff's federal claim. Qualified immunity "is 'an *immunity from suit* rather than a mere defense to liability; and . . . it is effectively lost if a case is erroneously permitted to go to trial.'" *Saucier v. Katz*, 533 U.S. 194, 200-201 (2001) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526

(1985) (emphasis in original)). As the Defendants correctly point out, the Court must engage in a two-part inquiry in determining the applicability of qualified immunity. The Court may first ask, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"[2] *Saucier*, 533 U.S. at 201. Then, it inquires as to "whether the right was clearly established." *Id.* This inquiry must be undertaken "in light of the specific context of the case, not as a broad general proposition." *Id.*

Viewing the facts in the light most favorable to the Plaintiff, he alleges facts suggesting that Keyes arrested and detained him without probable cause. Keyes' alleged conduct, therefore, would violate the Plaintiff's constitutional right to be free from unlawful search and seizure. Likewise, there is no dispute that the right the Plaintiff claims was violated was clearly established at the time of the violation. Specifically, police officers may not arrest a person without probable cause to do so. *Ker v. State of Cal.*, 374 U.S. 23, 34-35 (1963) ("The lawfulness of the arrest without warrant . . . must be based upon probable cause"). Therefore, Keyes is not entitled to qualified immunity.

The Defendants also contend that the Indiana Tort Claims Act ("ITCA") shields Keyes from personal liability for the Plaintiff's state law false arrest claim. The ITCA provides personal capacity immunity, stating in relevant part that "[a] lawsuit alleging that an employee acted within the scope of the employee's employment bars an action by the claimant against the employee personally." Ind. Code § 34-13-3-5(b). The statute, however, also contains a specific

---

[2] The Supreme Court has since decided that "while the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Moreover, "[t]he judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* Here, the Court applies the test in the sequence set forth in *Saucier*.

provision relating to law enforcement immunity and its limitations: Neither a governmental entity nor a government employee acting within the scope of his employment is liable for a loss resulting from the enforcement of a law, "unless the act of enforcement constitutes false arrest or false imprisonment." Ind. Code § 34-13-3-3(8) (2011) (amended 2016). When a government employee is not protected with immunity, as is the case with claims against individual officers for false arrest and false imprisonment, the ITCA requires allegations "that an act or omission of the employee . . . is: (1) criminal; (2) clearly outside the scope of the employee's employment; (3) malicious; (4) willful and wanton; or (5) calculated to benefit the employee personally." Ind. Code § 34-13-3-5(c). The Plaintiff does not allege any such conduct by Keyes. Therefore, the Court grants summary judgment with respect to state law false arrest claim against Keyes in his personal capacity.

## IV. CONCLUSION

For the reasons set forth above, the Defendants' motion for summary judgment (Dkt. No. 41) is **GRANTED** with respect to the Plaintiff's *Monell* claim against Defendant City of Indianapolis and state law false arrest claim against Keyes in his personal capacity and is **DENIED** with respect to all other claims against the Defendants. This case remains set for a Final Pretrial Conference on September 1, 2016, and a trial on October 3, 2016. The parties are reminded of their pre-trial preparation deadlines set forth in Part VIII of the case management plan in this case and are urged to review this Court's Trial Procedures and Practices found at Docket Number 19.

SO ORDERED: 7/18/16

*/s/ William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification.