UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| **RICHARD B. CARTER,** | ) |
| | ) |
|   Plaintiff, | ) |
| | ) |
|     vs. | ) Cause No. 1:14-cv-1845-WTL-DML |
| | ) |
| **CITY OF INDIANAPOLIS** *et al.*, | ) |
| | ) |
|   Defendants. | ) |

### ENTRY ON DEFENDANTS' MOTIONS IN LIMINE

This cause is before the Court on the Defendants' motions in limine (Dkt. Nos. 74 & 92). The motions are fully briefed and the Court, being duly advised, resolves them as set forth below.

The Court notes that the granting of a motion in limine is not a final ruling regarding the admissibility of the evidence at issue. Rather, it simply prohibits any party from eliciting testimony regarding or otherwise mentioning a particular issue during trial without first seeking leave of Court outside of the presence of the jury. Therefore, a party who wishes to elicit testimony or introduce evidence regarding a topic covered by a motion in limine that has been granted should request a sidebar conference during the appropriate point in the trial, at which time the Court will determine how best to proceed. Parties should always err on the side of caution and interpret rulings on motions in limine broadly, requesting sidebars before eliciting testimony or offering evidence that is even arguably covered by a ruling in limine and avoiding mention of such topics during voir dire, opening statements, and closing argument. Counsel shall also carefully instruct each witness regarding subjects that should not be mentioned or alluded to during testimony unless and until a finding of admissibility is made by the Court.

The Defendants combine several motions into one filing. Each of them is addressed, in turn, below.

*Evidence tending to suggest that the IMPD used excessive force, mistreated, or otherwise acted improperly with respect to Dean Hadley*

At the final pretrial conference, the Court requested from the parties proposals regarding the suggested scope of such evidence. Having reviewed the information provided by the parties, the Court **GRANTS** the Defendants' motion as follows. The Plaintiff's impressions of what he observed are relevant to his argument that Defendant Keyes did not have probable cause to arrest him. The Plaintiff will be allowed to testify regarding only *his impressions* of what he witnessed of Hadley's arrest. He may testify along the same lines as and at the level of detail that he described the arrest in his complaint and in response to the Defendants' interrogatory on this issue (Dkt. No. 92-1 at 3-4).

To be clear, testimony by Hadley, the case report for Hadley's arrest, photos of the victim that Hadley allegedly battered, the medical records associated with Hadley's intake medical screening at the Arrestee Processing Center, and Hadley's booking photo are excluded from trial. Such evidence is not probative of whether Defendant Keyes had probable cause to arrest Carter for public intoxication and would, in essence, cause a "mini-trial" regarding Hadley's arrest.

The Court intends to read a limiting instruction to the jury prior to Carter's testimony regarding his impressions of Hadley's arrest and again as part of the final jury instructions. The Court asks that by no later than **Wednesday, September 28, 2016**, the Plaintiff and the Defendants each provide a proposed limiting instruction regarding the proper use of the evidence described above.

*Evidence of the Plaintiff's claimed income and financial losses*

The Defendants seek to exclude evidence of the Plaintiff's claimed income and financial losses because the Plaintiff never provided to the Defendants a figure or an estimate for the amount of his claimed lost income, despite the Defendants' request for it during discovery. They argue that they are, therefore, "severely prejudiced by this evidence because discovery has long been closed and they have no opportunity before trial to make inquiry with [the] Plaintiff as to how he has now, finally, arrived at numbers he could not previously determine." Dkt. No. 74 at 8. The Plaintiff, however, still has not arrived at a lost income figure. Rather, he responds that his lost income "has remained constantly changing" and that he cannot determine his lost earnings until he hears testimony from Argyle Nelson regarding the jobs Nelson chose not to award the Plaintiff following his arrest. Dkt. No. 87 at 5. He further responds that, following Nelson's testimony, "[the] Plaintiff and Defendants will have equal opportunity to present to the jury their respective calculation of [the] Plaintiff's lost earnings damages based on [] Nelson's testimony and the tax returns and invoices that have been shared during discovery." *Id.* at 6.

During the final pretrial conference, Plaintiff's counsel conceded that he did not comply with the requirements in section III.E. of the Case Management Plan, requiring the Plaintiff to provide the Defendants with a statement of special damages on or before April 12, 2015. Plaintiff's counsel stated he provided special damages information to the Defendants in response to the Defendants' interrogatories and that no new information developed regarding his damages. The Court has reviewed the Plaintiff's interrogatory response regarding damages (Dkt. No. 74-1) and notes that no value is given for lost income.

Given that the Plaintiff provided no value for his income losses to the Defendants during discovery, failed to comply with the Case Management Plan, and at the final pretrial conference,

3

still did not disclose a value for his lost income, the Court **GRANTS** the Defendants' motion as to this issue.

*Evidence about the impact that the Plaintiff's arrest had on Aerial Video Systems, ESPN, or the production of the WNBA Finals game*

The Defendants seek to exclude evidence of the impact the Plaintiff's arrest had on Aerial Video Systems, ESPN, and the production of the WNBA Finals game because it claims such evidence is not relevant to the issues at trial. They explain that the jury must consider the issue of the Plaintiff's damages, not damages to Aerial Video Systems, ESPN, or the production of the WNBA Finals game. The Court agrees and **GRANTS** the Defendants' motion. However, to the extent that the effect of the arrest on the Plaintiff includes concern, anxiety, *et cetera* regarding the impact that his arrest would have on Aerial Video Systems, ESPN, or the production of the WNBA Finals game, such evidence is relevant to the issues at trial and is, therefore, not excluded.

*Plaintiff's Notice of Tort Claim*

and

*Evidence relating to "high profile" events in places like Ferguson, Missouri, or Baltimore, Maryland, the overzealousness of police officers, or other incidents of alleged police misconduct*

and

*Evidence relating to other lawsuits filed against the City of Indianapolis and/or its police officers*

The Plaintiff does not object to these motions; accordingly, they are **GRANTED**.

SO ORDERED: 9/23/16

*[signature]*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication

4